UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ELISABETH DOHERTY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. 1:17–CV–10161 |
| | * | |
| AMERICAN INTERNATIONAL | * | |
| COLLEGE | * | |
| | * | |
| Defendant. | * | |

## AFFIDAVIT OF NICOLLE CESTERO

I, Nicolle Cestero, being over the age of eighteen (18) years, hereby depose and state as follows:

1.  I am the Senior Vice President of Human Resources and Title IX Coordinator at American International College, the Defendant in the above-captioned matter.

2.  I make this Affidavit based upon my personal knowledge, except where indicated, and in support of the Defendant's Motion for Summary Judgment.

3.  In my capacity as Senior Vice President of Human Resources and Title IX Coordinator at American International College I have access to the College's records which are maintained in the ordinary course of business. Except where indicated, the exhibits cited in and attached to this affidavit are business records of the College. All exhibits cited in this affidavit are true and accurate copies. Exhibits containing the names of students other than the Plaintiff Elisabeth Doherty ("Doherty") have been redacted.

4.  I have held the position of Title IX Coordinator, in conjunction with my role in Human Resources ("HR"), since I began working at American International College ("AIC" or the "College") in July 2011. As Title IX Coordinator, I am responsible for oversight of all Title IX complaints, including complaints involving student-on-student sexual assault.

5.  Prior to my employment at AIC, I had more than seven years of experience working in HR, including five years as a Director. I had substantial experience responding to employee complaints, including complaints of sexual harassment, and conducting and overseeing related internal investigations. I had substantial experience reviewing,

1

implementing and enforcing non-discrimination and sexual harassment policies, as well as providing education and training to staff on these issues.

6.      Shortly after I began as Title IX Coordinator in 2011, I attended a training entitled, "Combating Sexual Violence and Harassment on Campus: Practical Implications of the Department of Education's Title IX Dear Colleague Letter," presented by attorneys from the law firm of Bowditch & Dewey LLP at Mount Holyoke College in South Hadley, Massachusetts. A copy of the slides from the presentation is attached as Exhibit A.

7.      During the 2011-2012 academic year, I continued to educate myself about Title IX compliance. For example, attached as Exhibit B are copies of several educational documents from United Educators, including a checklist for complying with the April 2011 Dear Colleague Letter, and a series of advisories on various Title IX compliance issues. I studied these documents to assist me in developing AIC's framework for responding to complaints of student-on-student sexual violence. I also reviewed the College's existing policies related to Title IX and helped identify changes to be made. The College worked with outside counsel to revise its policies related to Title IX and these were included in the 2012-2013 Student Handbook.

8.      During the 2012-2013 and 2013-2014 academic years, I continued to receive education and training on Title IX. For example, in 2013 and 2014, I engaged the law firm of Bowditch & Dewey to provide trainings to both myself and other administrators and staff who were responsible for responding to reports involving sexual harassment, including student sexual misconduct. Copies of the presentation materials from the 2013 and 2014 trainings are attached, respectively, as Exhibit C and Exhibit D. These trainings included: an overview of the College's policies on sexual harassment and sexual misconduct; overview and background about Title IX; key definitions; case studies; responding to allegations of sexual misconduct; how to address confidentiality issues; resources and support services to be offered to complainants; how to conduct interviews; how to conduct investigations, make credibility determinations, evaluate consent, and the role of alcohol in cases involving claims of sexual assault. I also provided training on Title IX and the College's related policies to other constituencies on campus, such as Residence Life and Campus Police. A copy of the slides from my presentation is attached as Exhibit E. I continued to review the Colleges Title IX policies and assist with updating and revising them each year.

9.      During the 2012-2013 through 2014-2015 academic years, the College provided information about its Title IX Policies and alcohol policies to its students in several

2

different ways. For example, the College presented on these topics during at new student orientation sessions, hosted presentations concerning sexual assault, published educational resources, and provided resources to students on its website, in the Student Handbook (which is provided to students electronically each year through the online student portal), and in electronic communications to the College community. Attached are copies of several related documents that were previously produced by the College during discovery in this case: Exhibit F (United Educators 2014 Discussion Guide for Preventing Student Harassment and Assault); Exhibit G (Title IX AIC/Paper Clip Communications 2015 Brochure on Title IX: Addressing Sexual Harassment/Sexual Violence); Exhibit H (AIC VAWA 2015 Brochure), Exhibit I (Student Campus SaVE Act Training 2014); Exhibit J (AIC 2014-2015 Statement on Drug and Alcohol Use), Exhibit K (Residence Life Pamphlet); Exhibit L (Clery Reports 2014-2015).

10.    On August 30, 2014, a little after 3:00 a.m., I received a call from campus police advising me that a student, Elisabeth Doherty ("Doherty"), had reported a sexual assault by another student on campus. I immediately got dressed and drove to the College to meet with Doherty.

11.    I arrived on campus within 30-45 minutes. I met with Doherty, explained my role as Title IX Coordinator at the College and gauged her comfort level (e.g., offered her water, a blanket, a professional counselor to speak with, and another place to rest). I asked Doherty to provide a verbal statement, which she did. A redacted copy of my typed-up notes of Doherty's verbal statement is attached as Exhibit M.

12.    I explained to Doherty her rights under Title IX and reviewed the Victims' Rights form with her. I informed Doherty that she may file a formal complaint though the College's Title IX procedure and/or press criminal charges with the police. I informed Doherty of the services that were available to her, including the College's counseling center, and off campus resources. Doherty was uncertain whether she wanted to file a formal complaint through the College's Title IX procedure and/or pursue criminal charges.

13.    Doherty gave me a copy of her text messages from earlier that morning with Respondent.[1] Doherty stated that she did not want Respondent living near her and was fearful of others knowing what had occurred. During the time that I was meeting with Doherty, her parents arrived on campus. I did not tell Doherty and her parents that I would be Doherty's advocate. My role as a Title IX Coordinator requires me to

---

[1] To comply with AIC's obligation to protect the privacy of AIC's students, I refer to AIC students in this Affidavit by their initials.

treat the complainant and the respondent in an equitable manner, so I cannot serve as the advocate for either party. I explained the College's Title IX process to Doherty and her parents. At the conclusion of the interview, Doherty indicated that she wanted to go home with her parents. I did not tell Doherty to go home with her parents.

14. After Doherty left campus, Respondent was brought to Campus Police, and I took his verbal statement. A redacted copy of Respondent's statement that I subsequently typed up is attached as Exhibit M. Respondent left campus with his mother.

15. On Monday, September 1, 2014, the College was closed for Labor Day, so I was not in the office. I called Doherty to check on her well-being from my mobile phone. Doherty returned my call and stated she was at home working through things. I stated there was no pressure from her for additional information, such as moving forward with a formal or informal compliant, but that we should remain in touch and I would reach out to her mid-week. Attached as Exhibit N is an excerpted copy from my phone records from September 1, 2014, showing that I placed a call to Doherty at 10:08 a.m. and that she returned my call at 12:28 p.m.

16. On Wednesday, September 3, 2014, Doherty advised me that she had decided to proceed with a formal complaint against Respondent. I answered various questions about the College's complaint process, and informed her that Respondent would be permitted on campus to attend classes and football practice pending the outcome of the investigation. Doherty was not happy about that, but I explained that because Respondent did not pose a threat to the general campus community, had not made threats against her, had not displayed acts of violence or a pattern of this type of history, and because he complied with all other orders, the College could not trespass him completely. I explained that Respondent would be given a no contact order which would prohibit him from contacting her for any reason. I also reiterated that the College would provide her with support including, but not limited to campus escorts, free counseling services and a dormitory change. Doherty stated she understood.

17. After Doherty decided to move forward with a formal complaint against Respondent, in accordance with the College's Title IX Policy, I needed to assign two individuals to conduct the investigation who had Title IX training. Cyndee Shiveley and Terrence O'Neill had both attended the Title IX training in 2013, were available to conduct the investigation, and did not have any prior relationship with Doherty or Respondent. Shiveley, who was the Assistant Director of Human Resources at that

4

time (she has since left the college), had many years of experience conducting investigations in her role in HR.

18.  On September 19, 2014, Shiveley attended a Title IX training session presented by attorneys from the law firm of Bowditch & Dewey LLP at Mount Holyoke College. Shiveley brought back the materials to share with me because I was unable to attend. A copy of the materials from the presentation is attached as Exhibit O.

19.  In accordance with the College's Title IX Policy, I appointed three individuals to serve on the Hearing Board who had been trained in Title IX. I chose Matthew Scott, the Deputy Title IX Coordinator, to serve as Chair because he had substantial training in Title IX, as well as several years of experience conducting student conduct hearings. Bruce Johnson and Nila Lenna, the other two Hearing Board members, had both attended the Title IX trainings at the College in 2013 and 2014.

**I hereby certify under penalty of perjury that the foregoing is true and correct.**

Nicolle Cestero
Senior Vice President-Human Resources
Title IX Coordinator
American International College

Dated: 7/3/18